## Willis Newton v. The State.

### No. 1242. Decided June 21, 1911.

**1.—Theft—Charge of Court—Conspiracy—Weight of Evidence.**

Where, upon trial of theft of cotton, the evidence did not show any conspiracy on the part of the defendant with other parties, and that he was present at the time these other parties had a conversation with reference to borrowing a wagon and team to move the alleged cotton, it was reversible error to instruct the jury that these statements in the absence of the defendant could be used against him, the jury not being told in what manner such testimony could be used against defendant, whether to prove the conspiracy or the entire transaction. Besides defendant was not connected with the conspiracy.

**2.—Same—Evidence—Conspiracy.**

Where, upon trial of theft of certain seed cotton, the evidence did not show a conspiracy between defendant and other parties concerned therein, and there was no predicate laid therefor, testimony on conspiracy was inadmissible.

**3.—Same—Charge of Court—Accomplice.**

Where, upon trial of theft of certain seed cotton, there was no evidence connecting defendant therewith, but the evidence showed that the defendant's brother and the State's witness were concerned therein, it was reversible error in the court's charge on accomplice testimony, taken in connection with the court's charge on principals and conspiracy, to so frame the same as to make the accomplice testimony applicable to the defendant as being criminally connected with the transaction.

**4.—Same—Charge of Court—Repetition.**

Where, upon trial of theft, the evidence showed that defendant's brother and the principal State's witness were concerned with the taking of the alleged stolen cotton, it was reversible error in the court's charge on principals, etc., to impress the jury by various repetitions in his charge that the defendant in the court's judgment was connected with the taking, there being no evidence to so connect the defendant, further than that the said accomplice furnished a team and wagon to defendant's brother, etc.

Appeal from the District Court of Eastland. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of theft of property over the value of $50; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. R. Stubblefield,* for appellant.—Upon the question of the court's charge on conspiracy that the acts and declarations of defendant's brother were admissible in evidence against the defendant: Martin et al. v. State, 38 Texas Crim. Rep., 285; Russell v. State, 37 Texas Crim. Rep., 314; Kelly v. State, 43 Texas Crim. Rep., 40; Bryant *v* State, 16 Texas Crim. Rep., 144.

Upon court's charge upon conspiracy, defendant not being present:

O'Quinn v. State, 55 Texas Crim. Rep., 18; Wright v. State, 40 Texas Crim. Rep., 45; Davis v. State, 55 Texas Crim. Rep., 495; Dawson v. State, 38 Texas Crim. Rep., 50; Bean v. State, 17 Texas Crim. App., 60; Rose's Notes, Texas Reports, 1910 ed., page 38.

On question of repetition of court's charge: Bonner v. State, 29 Texas Crim. App., 223; Irvine v. State, 20 Texas Crim. App., 12.

On question of court's charge on accomplice: Anderson v. State, 39 Texas Crim. Rep., 83; Hornberger v. State, 19 Texas Crim. App., 335; Ortis v. State, 18 Texas Crim. App., 282; Phillips v. State, 17 Texas Crim. App., 169; Smith v. State, 13 Texas Crim. App., 507.

*C. E. Lane,* Assistant Attorney General, for the State.—On question of court's charge on conspiracy: Watson v. State, 21 Texas Crim. App., 598; Smith v. State, id., 107; Trimble v. State, 33 Texas Crim. Rep., 397; Mason v. State, 31 Texas Crim. Rep., 306; Kegons v. State, 27 Texas Crim. App., 703; Williams v. State, 35 Texas Crim. Rep., 52; Burroughs v. State, 34 Texas Crim. App., 387; Blain v. State, 30 Texas Crim. App., 702.

DAVIDSON, Presiding Judge.—Appellant was convicted of the theft of what is charged in the indictment to be "a bale of seed cotton," his punishment being assessed at two years confinement in the penitentiary.

A brief summary of the evidence is to the effect that a wagon-load of seed cotton was stolen from what is known as the Red Tiger gin in Rising Star, Eastland County, and carried to a nearby gin known as the Farmers' and Merchants' gin. Roberts testified that he was the manager of the Red Tiger gin, and had control of it; that on the 4th or 5th of February, 1910, approximately one bale of seed cotton was taken from his gin at night, and that he found it in a wagon under the suction pipe of the Farmers' and Merchants' gin the following morning; that the mules that hauled the wagon and cotton had been taken from the wagon and were hitched to a nearby post. He undertook to identify this cotton as cotton which had been taken from the gin the night previous. He says at the time he went to the Farmers' and Merchants' gin he · saw appellant and several others standing around the fire in the engine-room of the gin. Later during the day, about the time appellant was arrested, he accused him of having some knowledge of the taking of the property, which appellant emphatically denied, and not only so, but proceeded to strike him very vigorously with his fist. A man named Carsey testified that he had made a pair of boots each for Dock Newton, brother of defendant, and the defendant; that these were high-heel boots and were made some time prior to the alleged theft. That on the day he ascertained the cotton had been stolen he and Henderson went to the Red Tiger gin and found some tracks near and in the gin; that they were tracks of two different persons; that these tracks were made by two pair of boots

which he had formerly made for the defendant and his brother; that he knew the tracks just as a man would know his own handwriting; that the soil, in which the boot tracks were made, was a tight, sandy soil, and that he could distinguish the imprint of each and every tack which had been driven in the heels of the boots. It will be noticed in this connection that appellant and his brother, previously to the time that this witness looked at the tracks, had been shown to have been about the house after the discovery of the wagon at the gin. He was permitted to state, in substance, that these tracks were made by the boots that he had made for these two parties. Continuing his testimony, he said there was nothing peculiar about those boots in the making of them; there was no difference between the tracks, so far as the tracks were concerned, as being different from each other; that there was no peculiarity to either pair of boots as far as the track was concerned.

Henderson, whom Carsey said was with him, was not placed on the witness stand, and no witness undertook to identify the track found near the Red Tiger gin as being the tracks made by appellant's boots otherwise than as stated by Carsey.

Holland testified he loaned Dock Newton, brother of appellant, the wagon and mules which were found at the Farmers and Merchants' gin on the day prior to the alleged theft of the cotton; that the wagon and mules were his, and that when Dock Newton, brother of appellant, borrowed the wagon and mules, Dock Newton left his horse with him, the witness stating that, when Dock borrowed the wagon and mules, he desired to haul some cotton from one gin to another gin. Dock's flight was also shown. The State also put in evidence to the effect that appellant left the county, and that he was subsequently arrested in Johnson County going under the name of J. H. Riley. This was testified by the witness Kilborn. It is, however, shown that defendant had remained around the town of Eastland about a week, which was the first week of the sitting of the grand jury, and that the grand jury remained in session little less than two weeks. That at the time appellant was arrested in Johnson County he was working out a fine for a misdemeanor on the county road. Appellant testifying in his own behalf denied any knowledge or complicity with the theft, and explained how he came to be going under the name of J. H. Riley, and in this connection stated that he had never in his life been required to work on the public road as a county convict, and that he was ashamed to have to work on the road as a convict; that he had been convicted for unlawfully riding on a train, and this was the reason he permitted himself to go under an assumed name. He stated he was not a fugitive from justice; that he had remained in Eastland for one week, during the session of the grand jury, awaiting its action; that an officer had informed him that he did not suppose he would be indicted, and he then left, and that he had not gone away with a view of avoiding the process of the court. It is further shown that appel-

lant spent the night in the little village of Rising Star the night of the theft at a hotel belonging to the witness Lester. That he had gone to Rising Star with a friend by the name of Basham; that they had taken supper at Basham's, and on account of the fact that Basham's residence was crowded with visitors, he had gone to Lester's hotel and taken a room, in which he spent the night. Lester testified that appellant came there and he assigned him a room, and appellant went to bed; that he saw nothing more of him until some time after sunrise the next morning, when he paid his lodging bill. Young Lester testified that he went to the room occupied by appellant the next morning sometime about sunrise, or little after, and aroused him—at least called him, and appellant answered—and the witness went away. Appellant testified in this connection also that he occupied the room the entire night; knew nothing of the theft of the cotton until the next morning; that about the time he got up his brother came in his room; that he got up and paid his bill and went away; that he and his brother took breakfast at a restaurant owned by a man named Graves; that the first time he had any knowledge of the theft of the cotton his brother told him he thought that he was in trouble about the matter, and that his brother left; he remained, and was arrested later during the morning. That after he was arrested Roberts accused him of having had some connection with the theft of the cotton, and he proceeded to use his fist on him rather vigorously, denying any connection with the transaction. There seems to be no question of the fact that the wagon and team belonged to Holland, who lived out in the country a few miles.

The court charged the jury, among other things, as follows: "If the jury believe beyond a reasonable doubt that Dock Newton and others formed a common purpose to commit theft, with respect to the seed cotton involved in this case, and that such conspiracy was formed, if in fact there was such a conspiracy, and that the defendant entered into the same, if he did do so, at any time before the taking of said seed cotton, if same was so taken, then the acts and declarations of the conspirators made and done in pursuance of the common design after said agreement was entered into by said defendant, if he did enter a conspiracy, and before the taking of such cotton, if same were taken by them, are admissible against defendant; but if the defendant did not enter into such a conspiracy, then you will disregard and not consider for any purpose any of the testimony relating to acts and declarations of the said Newton."

Appellant assigns error upon this charge. The witness Holland testified for the State, as before stated, that on the day prior to the theft of the cotton at night Dock Newton, appellant's brother, came to and borrowed the wagon and mules from him, and left his, Newton's, horse with witness. On the day following he got his wagon and mules at Rising Star. The uncontradicted evidence discloses the fact that

the cotton was found in the wagon of the witness Holland. It is further testified by Holland that when Dock Newton borrowed the wagon and mules that he left his horse with witness, and stated to him that he and Willis, appellant, had some cotton at one of the gins at Rising Star, and that he, Newton, desired to move the cotton from where it was to the other gin, as the gin where the cotton was was to be closed down. The charge of the court informed the jury the acts and declarations of Dock Newton were admissible in evidence and could be considered against the defendant, provided Dock Newton and others had formed a purpose to commit theft with reference to the seed cotton involved in this case; also that if defendant entered into such conspiracy before a theft occurred, and a theft did occur, then such acts and declarations of Dock Newton were admissible against the defendant made prior to the theft and in furtherance of a common design. It is contended, among other things, that this charge is on the weight of evidence in informing the jury and instructing them that this testimony or statement of Dock Newton in the absence of appellant could be used *against* appellant. We are of opinion this was a charge on the weight of evidence. This did not show any conspiracy between the parties so far as appellant was concerned. He was not present, and there is nothing indicated that he knew even that his brother was borrowing the wagon and mules of Holland. The court should not have told the jury to consider this against appellant.

In the case of Bryant v. State, 16 Texas Crim. App., 149, Judge Wilson, delivering the opinion of the court, said: "It is not always that the possession of recently stolen property is evidence against the possessor. It is always admissible in evidence in a trial for theft, but it is for the jury, and not the judge, to determine whether it is *against* the defendant." It is the duty of the court to inform the jury as to the law applicable to a given state of facts, but it is the province of the jury to determine whether such testimony is *for* or *against* the defendant. The jury are the judges of the facts and the credibility of the witnesses and the weight to be given to such evidence. The contention of the State under the evidence was that the bale of cotton was stolen from the Red Tiger gin, and if this was cotton from the Red Tiger gin, then there is no question of the fact that it was found in the wagon of Holland. Holland sought to explain this by saying that he loaned his wagon and mules to Dock Newton. There is no evidence in the record, outside of Holland's, that he ever loaned Dock Newton the wagon and team. The alleged stolen cotton was found in Holland's wagon, and Holland's mules were found hitched to a nearby post near to the wagon. Now, the court instructed the jury that if Dock Newton and others formed a common purpose to steal the cotton, and the defendant entered into the same, then the acts and declarations of the conspirators, in pursuance of a common design and prior to the theft, could be used by the jury *against* the defendant. Under this instruction the jury may have concluded that the fact that

the stolen property was found in Holland's wagon, that this could be used as a circumstance against Holland and not for defendant, but based upon the statement of Holland alone, the owner of the team and the wagon in which the property was stolen, that Dock Newton told him that he and appellant had some cotton they were going to move from one gin to the other, the court instructs the jury that Holland's statement could be used as evidence against the defendant under the circumstances. This was a charge on the weight of the evidence. To the same effect is Martin v. State, 38 Texas Crim. Rep., 285; Russell v. State, 37 Texas Crim. Rep., 314; Kelly v. State, 43 Texas Crim. Rep., 40.

In Martin case, supra, the trial court gave the following charge: "In arriving at your verdict in this case, you may consider all the facts and circumstances in evidence before you, but you can not consider as evidence against either of the defendants, the statements of the other made out of his presence or hearing, if any such statement were made; but you may consider, as evidence *against* either of the defendants, any statement made by himself, if any such statement was made." The court, passing upon the error assigned upon this charge, said: "The statements were not unequivocal confessions or the unequivocal admission of any criminative fact, but were mere statements that might, in connection with other facts or circumstances, be considered by the jury in arriving at their verdict. They might consider them criminative or not criminative, and for the court to suggest to them that they could consider such statements as against the defendant making them was, in effect, informing the jury that the statements were criminative as against the defendant making them, or the instruction was such as to leave the jury to infer that, in the mind of the court, such statements were of a criminative character, at least, as might be used against the defendant making the same. ⸱ This, in our opinion, was a charge on the weight of the testimony, which is expressly prohibited by our statute."

In Russell v. State, 37 Texas Crim. Rep., 314, supra, Judge Henderson, delivering the opinion of the court, said: "The court further told the jury, 'if they believed from the evidence that defendant resisted the arrest, and that such resistance showed or tended to show a consciousness or knowledge of the offense, they could consider such resistance against him.' Under said instruction, if defendant, without being informed by the posse for what he was being arrested, manifested a consciousness that he was being arrested for shooting into Groves' house, the jury, under the instruction of the court, need go no further, for that was the main fact in the case. The evidence shows, however, by some of the witnesses, that Waldrep, as soon as he accosted the defendant, told him that he was arresting him for shooting into the house and killing Mrs. Nichols. So, in connection with the evidence, the charge of the court instructing the jury that, if they believed defendant's resistance showed a consciousness of the offense for

which he was being arrested, then they could consider the same against him, was clearly upon the weight of the testimony, and brought out the fact of resistance prominently before the jury, and unduly magnified it."

In the Kelly case, supra, 43 Texas Crim. Rep., 40, the court gave this charge: "You are further charged that the valentine introduced before you, about which a controversy arose, can not be considered by you against defendant, unless you find, beyond a reasonable doubt, that defendant was connected with the production of the valentine." Judge Brooks, delivering the opinion of the court, said: "It is never permissible for the court to single out any part of the testimony and instruct the jury that it can be considered against the defendant."

The jury may have considered, and doubtless did, that the testimony of Holland was the most damaging evidence that was introduced against the appellant, and it became a matter of serious moment and highly prejudicial for the court to single out this evidence and instruct the jury that the same might, under any circumstances, be considered *against* appellant. The court is to determine the admissibility, but the court can not instruct the jury that certain evidence in the case is admissible against the accused. Such a charge is on the weight of the evidence. Holland might have been an accomplice or principal in this matter. We have the fact that his team and wagon were used in connection with taking and conveying the cotton from one gin to the other. This was a damaging fact in the case, so far as against Holland. The cotton was taken at night. An explanation was in order as to how his team and wagon became so intimately connected with the alleged stolen property. There was no attempt by any testimony except Holland's to disconnect him with the taking of the property. He stated that he had loaned his team to Dock Newton—not appellant. The evidence shows that appellant was not present at the time Holland let Dock Newton have the wagon and team, if in fact he did let him have it. Suppose Holland had been upon trial for the theft of the cotton? The fact that his team and wagon hauled the cotton would have been of a very damaging nature before the jury. His innocence in regard to the transaction would depend, so far as this record is concerned, exclusively upon his own statements. He may not have been guilty, but it is not the province of the court to say to the jury that they could use this character of testimony *against* the defendant, and especially so when viewed in the light of Holland's testimony that Dock Newton said that he and defendant had some cotton they desired to move from one gin to another. Again, it may be asked for what purpose could this testimony be used against the appellant? The court instructed the jury that they could use it against him, but for what purpose? It could not be used against him to show that he was a conspirator. The statements of co-conspirators can not be used against each other to prove the conspiracy when made in the absence of each other. The jury may have used the statement

of Dock Newton to Holland, that he and appellant had some cotton to move from one gin to another, as evidence of a conspiracy. They may have further used the fact of the loan of the wagon and team to Dock Newton, with the accompanying statement of Dock Newton to Holland, to show that a conspiracy existed with which appellant was connected. It may be again asked whether the court intended to charge the jury to use this evidence against appellant to prove a conspiracy, or to prove his connection with the taking of the cotton, or to prove the entire transaction. The court simply instructed the jury they could use these facts against the appellant under the circumstances stated in the charge. This turned the jury loose to wander and grope in the field of speculation and to attribute to appellant guilt in the entire transaction. There was no limitation put upon its probative force. It was to be used against appellant for all purposes.

There is a bill of exceptions in the record to the admission of these statements of Holland in the absence of appellant. It is presumed that the trial court admitted this testimony upon the theory that there would be a conspiracy subsequently shown by the facts. This testimony of Holland could not be admitted to prove the conspiracy so far as appellant was concerned. He was absent—knew nothing of it as far as the record is concerned. There is nothing to show that it was ever called to appellant's attention, or that he ever heard of it until developed upon the trial. O'Quinn v. State, 55 Texas Crim. Rep., 18, and Wright v. State, 40 Texas Crim. Rep., 45; Davis v. State, 55 Texas Crim. Rep., 495; Dawson v. State, 38 Texas Crim. Rep., 50; Bean v. State, 17 Texas Crim. App., 60. This testimony should not have been admitted under this record. If, however, upon another trial a sufficient showing or predicate is made, this evidence might become admissible.

With reference to the testimony of Holland, the court charged the jury as follows: "With regard to the testimony of the witness W. W. Holland, you will determine whether or not the said W. W. Holland is, in law, an accomplice; I charge you that an accomplice is one who is not present at the commission of an offense, but who, before the act is done, advises, commands or encourages another to commit the offense, or who agrees with the principal offender to aid him in committing the offense, though he may not have given such aid, or who prepares aid of any kind prior to the commission of the offense for the purpose of assisting the principal in the execution of the same. Should you determine from the facts in the case that the said W. W. Holland is, in law, an accomplice, if in fact such an offense as the one charged has been committed, then I charge you that our law provides that conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense, and in such event you could not find the defendant guilty upon the testimony of said W. W.

Holland, unless you first believe that his testimony is true, and that it shows that the defendant is guilty as charged in the indictment, and unless you further believe that there is other evidence in the case outside of the testimony of the said W. W. Holland, tending to connect the defendant with the commission of the offense charged."

This evidence clearly raised the issue as to whether Holland was an accomplice, when used as a witness, because the stolen property, if it was stolen, was found in his wagon, and Holland testified he had loaned the wagon and team to Dock Newton, the brother of appellant. It is unquestioned that Holland's team and wagon hauled this property to the Farmers' and Merchants' gin. As to who took the cotton and hauled it is dependent entirely upon circumstances. · Holland says he loaned the team and wagon to Dock Newton to haul cotton that Dock Newton claimed belonged to himself and brother. Whether Holland was present at the time the cotton was taken and hauled is not shown except by himself. Dock Newton left his horse with Holland when he got the wagon and team, under Holland's testimony. Dock Newton, of course, did not testify in the case. In fact, the record shows he had fled the country. Outside of Holland's testimony, and statement of appellant that Dock Newton told him that he was in trouble about the cotton, the evidence to connect Dock Newton with it is mainly dependent upon Holland's testimony. The presence of his team and wagon places Holland in rather an awkward attitude under the facts. An explanation was necessary. The court limited his charge exclusively in regard to Holland's testimony to his attitude as an accomplice, properly speaking, as if under indictment for the offense of accomplice. The testimony of the accomplice, when used as a witness, has a much broader significance than when a party is being tried for the offense of being an accomplice. It means any criminal connection of the witness with the transaction under investigation, either as a principal, accomplice, accessory, receiver of stolen property, etc. Holland's connection with the matter is limited by his own testimony supplemented by the fact that he furnished the wagon and team. He may or may not have furnished this team criminally. He may or may not have been present when the cotton was taken, but it is certain that he furnished the wagon and team to Dock Newton, and not the appellant. We are of opinion that the charge of the court is too restrictive. It may be stated, in a general way, there is running through the entire charge of the court, in regard to principal and accomplice, the idea that appellant was connected criminally with the transaction. Evidently, from the reading of these charges, it seems fully probable that the jury may have believed the court thought that appellant was connected with the taking of the cotton. If appellant did not participate in the taking, Holland could not be an accomplice or a principal to appellant.

It is also contended the court prejudiced appellant's case before the jury by various repetitions of the law in regard to principals, and

thereby impressed the jury that appellant, in his judgment, was connected with the taking, and from this continued repetition the jury may have been influenced, and doubtless were, by the court's charge.

Under our decisions this manner of charging the jury should be avoided. We have been called upon to reverse many cases for this reason.

The evidence in this case is far from satsifactory, and the court should be cautious under such circumstances in charges to the jury, not to convey his idea of the case, but charge the law only applicable to the facts.

There are other questions in the case we deem unnecessary to discuss in view of what we have said.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*